**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| S.F., b/n/f S.F. and S.F., | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. 4:10-CV-323-RAS-DDB |
| | § | |
| MCKINNEY INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Now before the Court are Defendant's Motion for Judgment (Dkt. 45) and Plaintiff's Motion for Summary Judgment (Dkt. 46). As set forth below, the Court finds that the motions should GRANTED in part and DENIED in part.

Plaintiffs, parents of a minor child with disabilities, S.F., filed this action pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400, *et seq.*, seeking reimbursement of attorneys' fees and allowable expenses incurred in successfully defending an administrative special education due process hearing initiated by Defendant McKinney Independent School District ("the District"), along with reimbursement of fees and expenses in pursuing the instant matter. Defendant has asserted a counterclaim challenging various findings at the administrative hearing.

### PROCEDURAL HISTORY

Prior to this suit, Defendant initiated an administrative hearing challenging Plaintiffs' request for independent educational evaluations ("IEEs") pursuant to the IDEA. 34 C.F.R. § 300.502(b).

1

Plaintiffs filed various counterclaims at the administrative level. The Special Education Hearing Officer ruled in favor of Plaintiffs on the sole issue raised by Defendant and concluded that Defendant's evaluations were not only inappropriate but in violation of the IDEA and several professional standards. The Hearing Officer ordered Defendant to pay for the IEEs and additionally found in favor of Plaintiffs on multiple counterclaims challenging Defendant's provision of an appropriate education to S.F.

Plaintiffs filed this action in order to recover the award of attorneys' fees as the "prevailing party" in accordance with 20 U.S.C. § 1415(i)(3)(B). Plaintiffs also seek recovery of damages and litigation expenses, including expert fees under the Americans with Disabilities Act, 42 U.S.C. §12205 and 28 C.F.R. § 35.175, damages under Sections 504 and 505 of the Rehabilitation Act, 29 U.S.C. § 794, and damages under 42 U.S.C. §§ 1983 and 1988. Defendant has filed a counterclaim challenging the Special Education Hearing Officer's administrative findings regarding Plaintiffs' due process counterclaims. *See* 20 U.S.C. § 1415(i)(2) (allowing a party who receives an adverse decision from a special education due process hearing to bring a civil action in district court challenging that decision).

Thus, the present case is both a suit by Plaintiffs to recover attorneys' fees and an appeal by Defendant of the Special Education Hearing Officer's administrative decision. The parties have filed cross-motions for summary judgment in this case on both Plaintiffs' claim for attorneys' fees and other damages and Defendant's appeal of the Special Education Hearing Officer's administrative decision.

STANDARD

This case arises under the IDEA, the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482. The IDEA's purpose is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A).

States receiving federal assistance under the IDEA must: (1) provide a "free appropriate public education" ("FAPE") to each disabled child within its boundaries, and (2) ensure that such education is in the "least restrictive environment" ("LRE") possible. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir.1997); 20 U.S.C. § 1412(1), (5). The FAPE provided must be developed to each disabled child's needs through an "individual educational program" ("IEP"), which is a written statement prepared at a meeting attended by a school district representative, a teacher, the child's parents or guardians, and, when appropriate, the child. *Michael F.*, 118 F.3d at 247; *see* 20 U.S.C. § 1414(d). In Texas, the committee responsible for preparing an IEP is known as an Admissions, Review, and Dismissal Committee ("ARD Committee").

The role of the judiciary under the IDEA is limited, leaving the choice of educational policies and methods in the hands of state and local school officials. *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003), *citing Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996). The court must reach an independent decision based on a preponderance of the evidence. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997); *Teague Indep. Sch.*

*Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993). However, this requirement "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed.2d 690 (1982). Instead, "due weight" is to be given to the hearing officer's decision. *Id.* Thus, "courts must be careful to avoid imposing their view of preferable educational methods upon the States. The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child." *Id.* at 207. The Court's task therefore is not to second guess a school district's decisions or impose its own plans for the education of disabled students; rather, it is the narrow one of determining whether the District complied with the IDEA. *White v. Ascension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003); *see also Daniel R.R. v. State Bd. of Edu.*, 874 F.2d 1036, 1048 (5th Cir. 1989).

The party seeking relief under the IDEA bears the burden of proof. *Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528, 535-537 (2005). The United States Supreme Court has explained the burdens – as to IEP challenges – as follows:

> The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief. In this case, that party is Brian, as represented by his parents. But the rule applies with equal effect to school districts: If they seek to challenge an IEP, they will in turn bear the burden of persuasion before an ALJ.

*Id.*, 546 U.S. at 62, 126 S. Ct. at 537; *see also Michael F.*, 118 F.3d at 252 ("a party attacking the appropriateness of an IEP established by a local educational agency bears the burden of showing why

the IEP and the resulting placement were inappropriate under the IDEA."). The burdens of proof at the district court level are identical to those at the administrative level. *Richardson ISD v. Michael Z.,* 580 F.3d 286, 292 n. 4 (5th Cir. 2009) ("[A]t the district court level, as at the administrative level, the party challenging the IEP bears the burden of showing that the IEP and the resulting placement are inappropriate under the IDEA.").

The Court notes that there has been significant dispute among the parties about their respective burdens herein. Based on the *Schaffer* opinion, it appears to the Court that, in a case like this one where both a school district and parents seek affirmative relief at the administrative level, each bears the burden of proof as to their respective affirmative claims to the Special Education Hearing Officer and this Court. Defendant is correct in stating that "[a] presumption exists in favor of the local public school district's plan for educating the child," however such a presumption exists "provided [the district] comports with IDEA." *Teague Indep. Sch. Dist.*, 999 F.2d at 132. Thus, even with the presumption, it seems to the Court that, contrary to Defendant's contentions, the ultimate burden still rests with a district which initiates administrative proceedings as to the claims it has initiated and with the parents as to any counterclaims raised in response. Nonetheless, the Court finds that even if the burden here rested solely on Plaintiffs as the parties challenging the district's actions and even taking into account the presumption given to the District, a preponderance of the evidence shows that Plaintiffs prevail under the IDEA.

Both parties have filed summary judgment motions and responses framing their positions in light of the administrative record before the Court. Here, the parties have not requested that the record be supplemented with evidence outside of the voluminous administrative record or that any

additional discovery to be conducted.[1]   Therefore, the Court will determine the merits of the summary judgment motions based on the administrative record.  *Austin Indep. Sch. Dist. v. Robert M.*, 168 F. Supp.2d 635, 638 (W.D. Tex. 2001), *aff'd*, 54 Fed. Appx. 413 (5th Cir. 2002); *see also Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994), *cert. denied*, 513 U.S. 839, 115 S. Ct. 123 (1994).

Although the IDEA sets forth specific burdens of proof as to proceedings under it, the Court will hold both parties to the procedural standards required in all summary judgment proceedings. As such, the parties are expected to cite to specific facts in the record.  *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  The citations to evidence must be specific, as the district court is not required to "scour the record" to determine the merits of the parties' arguments.  E.D. TEX. LOCAL R. CV-56(d); *see also Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998) (Rule 56 does not require court to rifle through the record in search of evidence to support a party's opposition to summary judgment).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). The Court has therefore based its analysis primarily on those portions of the record specifically cited by the parties.[2]

---

[1]The Court has denied Defendant's Motion to Limit the Scope of Trial (Dkt. 44) as moot based on the parties' representations that they do not seek to introduce any additional evidence here but instead seek resolution based on the administrative record alone.

[2]The Court notes that Plaintiffs' record cites in this case are not consistent with the pagination of the record provided to the Court and those cited by Defendant, significantly complicating the Court's – and presumably Defendant's – review of their arguments.  As to their response to Defendant's motion for summary judgment – which this Court has found to be

S.F. was born in January 2001 and has been a student in McKinney ISD since 2006, when she was in kindergarten. S.F. is eligible for special education services as a student with autism ("AU"), an auditory impairment ("AI"), and a speech impairment ("SI"). S.F. has been deaf since birth. Her mother is also deaf, and communicates using American Sign Language ("ASL"), Signed Exact English, oral speech and some lipreading. S.F.'s parents claim that ASL is her primary mode of communication and wished to have her educated accordingly.

A full individual evaluation ("FIE") of S.F. was conducted in Plano ISD in April 2006. The FIE concluded that S.F. met eligibility criteria for autism - pervasive developmental disorder -not otherwise specified ("PDD-NOS"), as well as AI and SI and made various recommendations and conclusions about her proposed classroom setting. Based on the recommendations in the May 2006 FIE, the Admission, Review, and Dismissal committee ("ARDC") determined that S.F. could be served appropriately in a self-contained structured teaching classroom ("STC") in McKinney ISD.

S.F. was placed by the ARDC in the STC in McKinney ISD for her kindergarten, first, and second grade years. In February 2008, the ARDC met to develop a new IEP for S.F. The new IEP included goals and objectives in the areas of academics, social skills/class routines, communication, self-help skills, behavior, and parent training. The February 2008 IEP also included a functional

_____

dispositive as to the majority of the issues on the merits here – Plaintiffs ultimately attached to their reply a response containing handwritten corrections to their cites. *See* Dkt. 63 at Exhibit 5. The Court has relied on those citations to determine whether Plaintiffs have met any burdens here.

[3]The facts set forth in this portion of the Court's report and recommendations are intended to serve as a background and shall not be deemed factual findings but are merely intended to provide an overview of the long history between the parties.

behavior assessment ("FBA") and a behavior intervention plan ("BIP"). Based on this IEP, S.F. continued to receive instruction from a special education teacher and received daily direct instruction from an auditorially impaired teacher.

In May 2008, another ARDC meeting was held at the request of S.F.'s parents. The parents expressed concern that she did not have a teacher who was fluent in sign with her all day. District staff responded that instructors signed with her throughout the day and had sufficient skills to communicate with her and address her goals. It was the District's position that S.F.'s placement in the STC addressed her needs as both a student with autism and an auditorily impaired student. S.F. has never been in a class of deaf students at McKinney ISD, and, according to her parents, her teacher was not certified in sign language.

In October 2008, S.F.'s parents requested another ARDC meeting to discuss placing S.F. at The Plano Regional Day School Program for the Deaf, a center providing specialized services to students with auditory impairments where S.F. received special education services from the age of two until her kindergarten placement in the McKinney ISD STC. The ARDC proposed that S.F. be re-evaluated, and another ARDC meeting was held on December 5, 2008, to review the re-evaluation plan.

In February 2009, an annual ARDC meeting was convened to review and revise S.F.'s IEP. District Staff reported progress in the areas of reading, communication, and behavior. New IEP goals and objectives addressing the areas of academic skills, language arts, social skills, mathematics, communication skills, independent living skills, and adaptive behavior skills were reviewed and approved by the ARDC. S.F. was to continue in the STC classroom, with services

from the AI teacher, speech therapy, and general education participation in art, the library, lunch and recess. She would continue to receive instruction in a one-to-one staff-to-student ratio, with the use of discrete trial training, ABA principles, and other specialized techniques. S.F's parents participated in the meeting, but disagreed with the recommendations.

On February 27, 2009, the new FIE report was completed for S.F. It was prepared with the assistance of Dr. Althea Schoenfeldt, a private practitioner specializing in the evaluation of deaf students who have additional disabilities. Information was gathered from a variety of sources, including educational history, information from teachers and parents, observations in a variety of settings, and standardized test instruments. One of the standardized assessments used was the Autism Diagnostic Observation Schedule ("ADOS"). The FIE made recommendations related to communication, social skills, behavior, and academics, including the use of picture choice boards coupled with signs, limitation of instructions to one or two signs at a time, systematic trials to teach social interaction/play skills, behavior training activities designed to promote compliance, attention to a communicator, and two-way communication, and continued use of the structured teaching approach to promote language skills.

In May 2009, ARDC meetings were held to review the FIE. S.F.'s parents disagreed with the FIE recommendations, because they did not recommend a placement in a deaf education classroom with deaf peers. The ARDC recommended that S.F. continue in the STC class at McKinney ISD.

After the District rejected a request that S.F. receive homebound services, she was home schooled for the 2009-2010 school year. In September 2009, S.F.'s pediatrician sent a letter to the

District requesting an independent educational evaluation (IEE) of S.F. Rather than grant the IEE, on October 2, 2009, the District filed for a due process hearing to determine the appropriateness of its FIE.

After the District initiated the Due Process Hearing, S.F.'s parents filed various counterclaims challenging the provision of a FAPE to S.F. under the IDEA. The parents also ultimately obtained an evaluation by an independent school psychologist who evaluated S.F.'s PDD and an evaluation by an independent speech-language pathologist who evaluated her auditory and speech impairments.

The administrative hearing was held March 2, 3, 4, and 5, 2010. The Special Education Hearing Officer issued his 50-page decision on May 10, 2010.

The decision contained extensive findings of fact and conclusions of law as to the District's claim regarding the IEE and S.F.'s parents' counterclaims under the IDEA. Based on the findings and conclusions, the Special Education Hearing Officer denied the relief requested by the District and granted some of the relief requested by S.F.'s parents. Specifically, the Special Education Hearing Officer ordered the District to: (1) reimburse Plaintiffs in the amount of $6,780.00 for the IEEs they obtained; (2) be prepared to provide an IEP for S.F. that includes an appropriate measurable annual goal/objective for toileting skills; (3) be prepared to provide an ESY program of direct one-on-one auditory impairment services to S.F.; (4) revise the IEP and BIP for S.F. and no longer subject her to the student code of conduct, unless the ARD mutually agrees otherwise; (5) review and train personnel in the IDEA notice requirements to ensure timely notice to parents; and (6) implement the Special Education Hearing Officer's final decision. *See* Dkt. 1-1.

The parties now seek relief under or review of the Special Education Hearing Officer's final decision.

ANALYSIS

**Defendant's Motion for Judgment**

The Court first turns to Defendant's Motion for Judgment (Dkt. 45), which challenges the merits of the Special Education Hearing Officer's findings regarding McKinney ISD's claims ordering the District to pay for the IEEs and the Special Education Hearing Officer's findings regarding Plaintiffs' multiple counterclaims challenging the District's provision of an appropriate education to S.F.

The District filed a request for due process hearing pursuant to 34 CFR § 300.502(b)(2) which provides:

> (2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either –
>
> (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or
>
> (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§ 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria.

34 CFR § 300.502(b)(2).

*The District's Affirmative Claims to the Special Education Hearing Officer*

Defendant first argues that the Special Education Hearing Officer erred as a matter of law in concluding that the District's FIE did not comply with IDEA procedural requirements. The

Special Education Hearing Officer found that "because the Petitioner/Counter Respondent's reevaluation was not appropriate, the Respondent/Counter Petitioner is entitled to the multidisciplinary IEE, which it already obtained, at public expense." Dkt. 1-1 at 26.

The Special Education Hearing Officer found the District's evaluation of S.F. was not appropriate for several reasons. First, the Special Education Hearing Officer found that the District violated the IDEA because it used the Autism Diagnostic Observation Schedule (ADOS) to evaluate S.F., when the ADOS guidelines say it should not be used with deaf individuals. The Special Education Hearing Officer further found that, even if ADOS guidelines permitted its use with deaf individuals, neither it nor the communication assessment tool VB-MPP were administered in S.F.'s natural mode of communication, American Sign Language. *See* Dkt. 1-1 at 23-26.

IDEA regulations require that in conducting evaluations of a child with a disability, each public education agency "***must ensure*** that – (1) Assessments and other evaluation materials used to assess a child under this part – (v) Are administered in accordance with any instructions provided by the producer of the assessments." 34 C.F.R. § 300.304(c)(1)(v) (emphasis added).

It is also provided that the public agency ***must ensure*** that assessment and evaluation materials are "provided and administered in the child's native language or other mode of communication and in the form most likely to yield accurate information on what the child knows and can do academically, developmentally, and functionally, unless it is clearly not feasible to so provide or administer." 34 C.F.R. § 300.304(c)(1)(II).

Having reviewed the record here, the Court finds that the preponderance of evidence failed to show that the District ensured that the evaluation of S.F. fully complied with the ADOS'

producers' requirements and guidelines. The regulations require that the public agency "must ensure" certain aspects of an evaluation. Here, it seems undisputed that neither party submitted a copy of the ADOS manual for the Special Education Hearing Officer's consideration; therefore, without the manual or evidence in the record to show that the District provided a copy during the course of the administrative proceedings, the Court cannot find that the District "ensured" that the evaluation was being conducted in accordance with said manual. Moreover, Dr. Barnes' testimony at the administrative hearing indicated that the ADOS is "not recommended to use with deaf children." TR[4] at 467. And even Dr. Schoenfeldt testified that the ADOS should be used "with some discretion" with deaf children and "that's what the manual says." TR at 144.

Defendant cites to *Christopher M. v. Corpus Christi Indep. Sch. Dist.* – without any pinpoint cite – for the proposition that evaluations by school personnel are generally accorded a presumption of correctness. 933 F.2d 1285, 1292 (5th Cir. 1991). The Court finds that Defendant's argument is not supported by the case cited. In declining to create a presumption in favor of the child's treating physician over school personnel, the Fifth Circuit in *Christopher M.* does not hold that the school personnel are entitled to a presumption in their evaluations.[5] Instead, the Court reasons "[t]he district court is certainly capable of assessing the individual circumstances of each case and evaluating the credibility of both medical and non-medical witnesses." 933 F.2d at 1292. In light of this precedent, the Court finds that it – and the Special Education Hearing Officer – are entitled

_____

[4]The transcript of the Due Process Hearing submitted to the Court is contained in three volumes, but consecutively paginated. Unless otherwise indicated "TR" refers to the Due Process Hearing alone and "AR" refers to the Administrative Record.

[5]Schools are, however, entitled to a presumption in favor of the ultimate plan developed for the student. *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 132 (5th Cir. 1993)

to weigh the credibility of both Dr. Barnes (who is relied on by Plaintiffs) and Dr. Schoenfeldt (who is relied on by Defendant), both of whom have extensive special education expertise, and others, to determine whether the ADOS was given in accordance with the producers guidelines.

As noted by the Special Education Hearing Officer, Dr. Barnes is a licensed school psychologist who is also a certified education diagnostician and certified sign language interpreter. Dr. Barnes indicated the ADOS was not recommended for use with deaf children, and Dr. Schoenfeldt's own testimony was that it should be used with discretion. Even taking both of these opinions as true, there is simply nothing cited to in the record that would show that – as to S.F. and her particularized needs – the District ensured that the ADOS was used in a manner intended by its producers.

Defendant further argues that, since S.F. had already been diagnosed with autism, the ADOS was not being used for formal diagnosis but instead to gain information about her social and communicative features "beyond language issues." Dkt. 45 at 15. The Court finds that the IDEA does not make such a distinction in its requirement that the District ensure that evaluations be conducted in accordance with producers' guidelines. Moreover, Plaintiffs have cited to one of S.F.'s school records where the District cited to ADOS as a tool used for diagnosing autism. AR at 1921. An independent review of the record supports the Special Education Hearing Officer's findings, and the Court finds that, if used at all, the ADOS was required to be used in accordance with the producers' guidelines.

The Court has further reviewed those portions of the record cited regarding the failure to administer S.F.'s evaluation in sign language. The Court agrees that the record fails to establish that

the District ensured that the assessments and evaluations used were administered in sign language "in the form most likely to yield accurate information."  34 C.F.R. §300.304(c)(1)(II).  Testimony was presented at the hearing that Dianne Bitter was observed "using sign during the assessment," TR at 172.  However, Bitter was not believed to be certified in sign and it is unclear whether she is fluent in it.  *Id.*  The fact that the record shows that others in the room during the evaluation may have used sign or been fluent in sign, as Defendant shows, does not establish that sign was the sole language used with S.F. in administering the assessments in order to yield accurate response.  Therefore, the Court cannot find that the District ensured that, even if it were an appropriate measure given S.F.'s deafness, the ADOS was given to her in sign language and in the form most likely to yield accurate information.

Next, Defendant argues that the Special Education Hearing Officer erred by finding that the FIE did not comply with the IDEA because the District discarded S.F.'s test protocols (the test booklet with the recording of responses or scores) for her re-evaluation.  Under the IDEA regulations, each public agency must "ensure that information obtained from [aptitude and achievement tests, parent input, and teacher recommendations, as well as information about the child's physical condition, social or cultural background, and adaptive behavior] is documented and carefully considered."  34 C.F.R. § 300.306(c)(1).

The Special Education Hearing Officer found that the District failed to ensure that the information from the evaluation was documented in accordance with this provision.  The Special Education Hearing Officer further found that the discarding of the test protocols was a violation of the IDEA because it "[s]ignificantly impeded the parent's opportunity to participate in the decision-

making process regarding the provision of a FAPE to the parent's child." 34 C.F.R. § 300.513.

The District argues that the FIE included the data from the test protocols and it was therefore documented in accordance with the IDEA. The District further responds that Plaintiffs' independent expert had ample opportunity to point out concerns regarding concerns about test data and that Plaintiffs only first expressed a genuine interest in reviewing them during the course of the Due Process Hearing.

While the Court declines to find that the destruction of any test protocols constitutes a *per se* failure to document information under the IDEA and regulation 34 C.F.R. §300.306(c)(1), the Court finds that the allegations in this case are sufficient to show that the failure to keep the test protocols impeded S.F.'s parents' opportunity to participate in the decision-making process as is required by 34 C.F.R. § 300.513.[6] As indicated by the record, much of the dispute as to the FIE was the manner in which at least some evaluations were conducted and whether the District's method yielded accurate results about S.F.'s condition and proposed treatment.[7] Her parents were, based on the disputed matters in this case, entitled the opportunity to see them.

---

[6]The Court also declines to adopt any inference that the destruction of the protocols was an intentional attempt to cover up any errors in the data collected or would warrant a spoliation finding. Instead, it appears to the Court likely a result of negligence and poor records management.

[7]The Court agrees with the Special Education Hearing Officer and Plaintiffs that the findings in the *W.H. ex rel. B.H. v. Clovis Unified School Dist.* case are distinguishable. 2008 WL 5069711, 7 (E.D. Cal. 2008). Unlike this case, the test results in *W.H.* were not in dispute, therefore, the court found that the failure to provide plaintiffs with testing protocols was harmless error. As noted above, the Court finds that the record here establishes by a preponderance of the evidence that the manner in which the tests were conducted and their results were disputed, making their destruction relevant and anything but harmless.

Moreover, the regulations required that the District notify "parents when personally identifiable information collected, maintained, or used under this part is no longer needed to provide educational services to the child." 34 C.F.R. § 300.624. There is some dispute between the parties as to whether the test protocols constitute personally identifiable information and when Plaintiffs requested such protocols. Regardless of these disputes, without them as part of the administrative record, the Court is unable to determine whether they would alter any findings as to the propriety of the FIE. And, giving the Special Education Hearing Officer's findings due weight as is required, the Court agrees that their destruction here was premature and in contradiction with the IDEA. *See Schaffer v. Weast*, 546 U.S. 49, 60-61, 126 S. Ct. 528, 536 (2005) (noting that the "IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition."). Even if their destruction did not rise to the level of a substantive violation of the IDEA, but instead was a procedural violation of the IDEA, the Court finds their absence impeded S.F.'s parents' opportunity to participate in the process. 20 C.F.R. §1415(f)(3)(E)(ii)(II).

Whether Defendant has an appropriate document retention program for such test protocols is not for the Court to determine here. The Court also declines to address the contention that an independent contractor – rather than Defendant – destroyed them. The bottom line is that their destruction prevented S.F.'s parents, independent evaluators, the Special Education Hearing Officer, and even this Court from reviewing them. This denied Plaintiffs the full opportunity to challenge

the results of the District's FIE.

The Court further is unconvinced by Defendant's argument that the matter was not properly before the Special Education Hearing Officer because Plaintiffs did not make a specific request for the test protocols until the filing of their counterclaims at the administrative level. According to Defendant's reply, the absence of the protocols was not fully clear to all until the commencement of informal discovery as to Plaintiffs' counterclaims at the administrative level. The record *in this proceeding* indicates that destruction of the test protocols impeded Plaintiffs' rights.

In conclusion as to the District's claims regarding Plaintiffs' request for an IEE, the Court agrees with Defendant that the IDEA permits the District to conduct an FIE based on a variety of tools. However when using such a variety of assessment tools – which the record in this case indicates the District unquestionably did – the District must still demonstrate compliance with the regulatory mandates under the IDEA regarding the proper use of each assessment tool. The regulations are very clear in that they require the District to "ensure" that such procedural standards are met. Defendant has not cited to – and the Court cannot identify any – sufficient evidence in the record here to indicate that, even if case law indicates that its ultimate IEP is presumed appropriate, the District ensured the procedural safeguards were met in arriving at those determinations in this case.

Absent governing authority indicating otherwise, the Court is bound by the plain language of the regulations requiring the District to "ensure" certain safeguards. The Court finds that the record here does not show that the District made such assurances. "A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation

obtained by the public agency." 34 C.F.R. § 300.502(b). Therefore, based on the preponderance of the evidence here, Plaintiffs were entitled to the cost of the mulitdisciplinary IEEs they obtained at public expense.

*Plaintiffs' Counterclaims to the Special Education Hearing Officer*

Next, the Court turns to Defendant's challenges to the Special Education Hearing Officer's findings regarding Plaintiff's counterclaims. At the administrative hearing, Plaintiffs asserted various counterclaims alleging that the District failed to provide S.F. with a FAPE.

Under the IDEA, public school districts in states receiving federal funds must provide each child with a FAPE. 20 U.S.C. § 1412(a)(1). To establish that the District failed to provide S.F. with a FAPE, Plaintiff must first demonstrate that: (i) the District failed to comply with the procedures set forth in IDEA; or (ii) the individualized education program (IEP) developed by the District through the IDEA's procedures was not reasonably calculated to enable S.F. to receive educational benefits. *Bd. of Edu. v. Rowley*, 458 U.S. 176, 207-08, 102 S. Ct. 3034, 3051 (1982).

In determining whether an IEP is appropriate, the Fifth Circuit has outlined four factors to consider: (1) whether the program is individualized on the basis of the student's assessment and performance; (2) whether the program is administered in the least restrictive environment; (3) whether the services are provided in a coordinated and collaborative manner by the key "stakeholders"; and (4) whether positive academic and non-academic benefits are demonstrated. *Michael F.*, 118 F.3d at 253.

In other words, an IEP must be geared to provide "meaningful" educational benefit. *Rowley*, 458 U.S. at 192; *see also Michael F.*, 118 F.3d at 248. The inquiry does not turn, however, upon

whether the District provided S.F. with an education designed to maximize her potential. *Michael F.*, 118 F.3d at 247-48. As the IDEA guarantees a "basic floor or opportunity," the District is only bound to provide "access to specialized instruction and related services which are individually designed to provide educational benefit." *Rowley*, 458 U.S. at 201. "Nevertheless, the educational benefit to which the [IDEA] refers and to which an IEP must be geared cannot be a mere modicum or de minimis; rather, an IEP must be 'likely to produce progress, not regression or trivial educational advancement.'" *Michael F.*, 118 F.3d at 248 (footnotes omitted) (quoting *Bd. of Educ. of the E. Windsor Reg'l Sch. Dist. v. Diamond*, 808 F.2d 987, 991 (3d Cir.1986)).

Here, the Special Education Hearing Officer made various findings in Plaintiffs' favor under the four *Michael F.* factors, and Defendant now challenges those findings. The Court will examine the record *de novo* under the four *Michael F.* factors listed above to determine whether S.F.'s IEP was appropriate. Because Plaintiffs have challenged the District's IEP, they bear the burden of proof in showing it was not appropriate. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 248 (5th Cir. 1997); *Alamo Heights Indep. Sch. Dist. v. State Bd. of Edu.*, 790 F.2d 1153, 1158 (5th Cir. 1986); *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 467 (5th Cir. 1995); *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 132 (5th Cir. 1993).

<u>Individualized Services</u>

In this case, the Special Education Hearing Officer found that the IEP was not individualized because it failed to address an annual goal or objective for toileting skills, which, according to the Special Education Hearing Officer was a known weakness for S.F. Defendant argues that "[t]he record shows that toileting had been addressed in an earlier IEP, but was removed based on medical

recommendations," but does not cite to the portion of the record evidencing the medical recommendations. Dkt. 45 at 22.

Testimony at the hearing indicates that school officials determined not to implement toilet training because S.F. had frequent urinary tract infections. TR 956-57. That testimony acknowledges that it was considered to be an ongoing issue but not included in S.F.'s IEP for 2008-2009. *Id.*

Having reviewed the record as cited by the parties, the Court is not convinced that the District adequately addressed the toileting concerns specifically relating to S.F. An IEP must be 'likely to produce progress, not regression or trivial educational advancement.'" *Michael F.*, 118 F.3d at 248 The undisputed fact that toileting had been identified in prior IEPs, coupled with the testimony that S.F. continued to have toileting problems during the 2008-2009 school year, indicates to the Court that the IEP developed was not likely to produce progress from prior years but more likely to result in regression. Moreover, the fact that toilet training may not have been successful while S.F. suffered from urinary tract infections does not mean that it should not have been included as a goal in her 2008-2009 IEP.

Defendant further argues that the failure to include one area of weakness in an IEP does not violate the IDEA. In support of this contention, Defendant cites to 20 U.S.C. §1401(20). *See* Dkt. 45 at 22. This section provides the statutory definition of "native language" under the IDEA. Although Defendant correctly states that improvement in every area of an IEP is not required, Defendants have cited no governing precedent that holds that failure to address a single weakness cannot, in itself, be an IDEA violation. Indeed, the Court finds that such a failure would be weighed

based on the facts of the student's disability and the identified weakness and the other *Michael F.* factors. Further, as with the Special Education Hearing Officer who weighed his findings regarding toileting in conjunction with his findings regarding the other *Michael F.* factors to reach a decision that the IEP was not appropriate, the Court declines to analyze any findings regarding toileting in isolation. The Court does find, however, that this factor weighs in favor of Plaintiffs.

### Least Restrictive Environment

Next, Defendant argues that the Special Education Hearing Officer erred in concluding that S.F. was not educated in the least restrictive environment, or LRE. The IDEA requires that "to the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in the regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

In *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036 (5th Cir. 1989), the Fifth Circuit developed a two-part test to determine whether Section 1412 has been complied with:

> First, we ask whether education in the regular classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a given child. *See* § 1412(5)(B). If it cannot and the school intends to provide special education or to remove the child from regular education, we ask, second, whether the school has mainstreamed the child to the maximum extent appropriate. *See id.* A variety of factors will inform each stage of our inquiry; the factors that we consider today do not constitute an exhaustive list of factors relevant to the mainstreaming issue. Moreover, no single factor is dispositive in all cases. Rather, our analysis is an individualized, fact-specific inquiry that requires us to examine carefully the nature and severity of the child's handicapping condition, his needs and abilities,

and the schools' response to the child's needs.

*Daniel R.R.*, 874 F.2d at 1048.

In this case, the focus was on the second prong of the *Daniel R.R.* analysis, as all parties agreed that S.F. could not be educated in the regular classroom. The Special Education Hearing Officer found that S.F. was not educated in the LRE since she was not placed in a classroom with classmates who could sign to her directly. Defendant argues that the Special Education Hearing Officer misinterprets state law and policy for the education of deaf students.

Section 29.305 of the Texas Education Code provides:

> If practicable and not in conflict with any admission, review, and dismissal committee recommendations, a student who is deaf or hard of hearing must have an education in the company of a sufficient number of peers using the same language mode and with whom the student can communicate directly. If practicable, the peers must be of the same or approximately the same age and ability.

Tex. Educ. Code § 29.305.

Further, IDEA regulations require that those developing the IED for a deaf child "consider the child's language and communication needs, opportunities for direct communications with peers and professional personnel in the child's language and communication mode, academic level, and full range of needs, including opportunities for direct instruction in the child's language and communication mode." 34 C.F.R. § 300.324(a)(2)(iv).

Both the IDEA and the Texas Education Code thus require, if practicable, opportunities for direct communication between the deaf child and others in the room in that child's mode of communication. Here, as Defendant concedes, S.F. was placed in a room "with peers who were able

to use some signs, but only when prompted to do so...." Dkt. 45 at 25. Defendant argues that the ARD found this to be a suitable placement since these peers' level of signing was similar to S.F.'s ability and that S.F.'s autism resulted in other communication deficits making signing difficult or fluency unnecessary to meet her level of signing.

Speech language pathologist Tami Willard testified that S.F. should be educated in a deaf education classroom with deaf peers who use sign language as their native language. TR at 891-892. Willard further testified that students who know six to 100 signs who are not always communicating in ASL should not be considered peers of S.F. TR at 892.

Considering this testimony and the District's own concessions that S.F.'s peers were not fluent in ASL and required prompting to use signs, and giving due weight to the Special Education Hearing Officer's findings, the Court finds that the District's IED did not place S.F. in the LRE. The least restrictive environment has been defined by the Fifth Circuit as "not only freedom from restraint, but the freedom of the child to associate with his or her family and able-bodied peers to the maximum extent possible." *Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 128 n.2 (5th Cir.1993) (emphasis added) (citations omitted). While the Court is sympathetic to the fact that S.F.'s autism makes any interaction – including communication in ASL – significantly more difficult for both her peers and instructors, the IDEA and Texas regulations require the opportunity for direct communication in the child's native language. Sign language is the native language – not autism. Thus, in striking the balance between the communication deficits inherent in both, the Court finds that, as to S.F., her deafness trumps in fashioning the least restrictive environment. Thus, like the Special Education Hearing Officer, the Court finds that this factor weighs in Plaintiffs' favor.

*Key Stakeholder*

Here, nothing in the record suggests that the special education teacher and deaf teacher failed to coordinate their services. Nor does this *Micahel F.* factor appear to be in dispute. Therefore, this factor weighs in the District's favor.

*Educational Benefit*

Academic benefit should "be measured not by [a student's] relation to the rest of the class, but rather with respect to the individual student." *Houston Indep. Sch. Dist. v. Bobby R*., 200 F.3d 341, 349 (5th Cir. 2000). The record here indicates that the District failed to address adequately issues such as toileting, behavior and providing S.F. with peers and teachers with whom she could consistently interact. The record also indicates that S.F. showed some progress, including writing the alphabet, tracing numbers, sitting independently, and improved eye contact in February 2009 and that she had mastered some of these skills by May 2009. AR 932-934, 1017-1019.

Even with these purported improvements, of particular concern here is the ability to teach S.F. ASL if she was not surrounded by those fluent in it for more than an hour each school day. Thus, while her vocabulary in sign did increase some over the 2009 year, the Court questions whether the District's plan would lead to further academic benefits and non-academic (including social and behavioral) without more fluency by those with whom she was surrounded. While the Court finds that the record indicates that the IEP did outline some positive academic and non-academic benefits, the Court finds the deficiencies in the methods of classroom communication in particular weigh against the District.

And, having examined this case under all four of the *Michael F.* factors, giving due weight to the Special Education Hearing Officer's findings, and based on the preponderance of the evidence before it, the Court agrees with the Special Education Hearing Officer that the District's IEP for S.F. was not reasonably calculated to enable her to receive meaningful educational benefits and thus did not provide her with a FAPE in accordance with the IDEA.

*BIP*

Defendant next argues that the behavior intervention plan (BIP) developed for S. F. was appropriate. The record here does not support Defendant's contentions.

The Texas Administrative Code sets forth the requirements for any IEP developed in Texas in accordance with the IDEA. In addition to compliance with certain federal regulations, an IEP in Texas must, when practicable with a student with autism or a pervasive developmental disorder, address "positive behavior support strategies based on relevant information," including a "Behavior Intervention Plan developed from a Functional Behavioral Assessment that uses current data related to target behaviors and addresses behavioral programming across home, school, and community-based settings." 19 TEX. ADMIN. CODE §§ 89.1055(e)(4); *see also* 19 TEX. ADMIN. CODE § 89.1040(c)(1).

Here, the Special Education Hearing Officer found that the District did not comply with the Texas regulations implementing the IDEA by developing a BIP that permitted S.F. to be disciplined in accordance with the student code of conduct when she was not capable of complying with it. The record indicates that the District found that S.F. was able to comply with the code of conduct without any modifications. AR 935. Dr. Barnes testified that S.F. probably does not understand the "fairly complicated" conduct code. TR 571-72. Christy Batson, a behavior analyst with the District, stated

that she did not believe that S.F. could comply with the student code of conduct, TR 1115, and Sarah Quintanilla, S.F.'s teacher in the 2008-2009 school year, testified that she was "not trained in the behavior" and "wasn't sure how to manage that." TR 1144-45.

Given these concessions, and even taking into account the regulations setting forth the authority given to school personnel regarding disciplining students with disabilities set forth in 34 C.F.R. §§ 300.530-300.537, the Court finds that a BIP which includes compliance with a student code of conduct, which even District officials do not believe S.F. could fully understand, is inappropriate. S.F.'s records indicate many behavioral struggles while at school. While the Court is sympathetic to the educators involved who must balance the need to maintain safety and order in the classroom with the prohibition against unfair discipline resulting from disabilities, S.F. apparently could not be held to the student code and it therefore should not have been part of her BIP.

As to Defendant's contention that any errors in the BIP were essentially harmless because S.F. was never disciplined under the code of conduct, the Court is not convinced. If her teachers were not properly trained in behavior management and if the implementation of the code of conduct was ineffective with S.F., the BIP was not properly targeted to her individualized needs and detracted from S.F.'s classroom experience. The IDEA requires that plans be individualized. For these reasons, and giving the Special Education Hearing Officer's findings the due weight it is instructed to, the Court finds that the BIP developed in conjunction with the IEP was not appropriate.

Defendant also argues in its summary judgment motion that this Court should reverse the Special Education Hearing Officer's order that the District should provide an extended school year program to S.F. with direct one-on-one auditory impairment services. The parties do not point to any Fifth Circuit case setting forth the standard of review for the equitable relief ordered by an Special Education Hearing Officer once it has found an IDEA violation, and it is unclear whether Defendant's challenge of this relief falls under the same "de novo" standard described above or whether it would be subject to an abuse of discretion standard. Regardless of which standard the Court is to apply, however, the Court finds that the award of ESY was appropriate.

It was within the Special Education Hearing Officer's statutory authority to enter orders required by justice. 19 TEX. ADMIN. CODE § 89.1170(b). Similarly, in an IDEA appeal, this Court is directed to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Under this provision, "equitable considerations are relevant in fashioning relief," and the Court enjoys "broad discretion" in so doing. *School Committee of Town of Burlington, Mass. v. Dept. of Educ. of Mass.*, 471 U.S. 359, 369, 374, 105 S. Ct. 1996, 2002, 2005 (1985) (interpretting same statutory language in prior version of IDEA). *See also Florence County Sch. Dist. Four v. Carter By and Through Carter*, 510 U.S. 7, 16, 114 S. Ct. 361, 366 (1993) ("courts fashioning discretionary equitable relief under IDEA must consider all relevant factors...").

Giving due weight to the Special Education Hearing Officer's determinations and having considered the significant portion of this record addressing the need for immersed communication with S.F. in ASL, the Court agrees that ESY (in conjunction with a revised IEP and BIP for S.F. and

additional training for Defendant's personnel) will address the educational issues raised herein.

**Plaintiff's MSJ Regarding Claim for Attorney's Fees Under the IDEA**

The Court next turns to Plaintiff's Motion for Summary Judgment (Dkt. 46). The Court has addressed many of the issues raised by Plaintiffs above. The only issue remaining under the IDEA is Plaintiffs' request for attorneys' fees. Plaintiffs seek summary judgment as to their fee request, and Defendant argues that Plaintiffs are not entitled to summary judgment regarding their claims for attorneys' fees because they cannot be considered prevailing parties under the IDEA.

Under the IDEA, "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs—to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(A)-(B)(i)(I). Thus the threshold question in an action for attorneys' fees is whether the party seeking fees is a prevailing party. *El Paso ISD v. Richard R.,* 591 F.3d 417, 421 (5th Cir. 2009) (*citing Jason D.W. ex rel. Douglas W. v. Houston ISD,* 158 F.3d 205, 209 (5th Cir. 1998)). The Fifth Circuit defines a "prevailing party" as one "that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA." *Richard R.,* 591 F.3d at 421–22 (holding that under the IDEA "a litigant must attain some judicial imprimatur on a material alteration of the legal relationship in order to be a prevailing party") (*citing Jason D.W.,* 158 F.3d at 208; *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1983) ("[P]laintiffs may be considered 'prevailing parties' ... if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."); and *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Res.,* 532 U.S. 598, 603–04, 121 S. Ct.

1835, 149 L. Ed.2d 855 (2001) (a prevailing party is one that has obtained a judgment on the merits, a consent decree, or some form of judicially sanctioned relief)). The Special Education Hearing Officer's decision provides the necessary "judicial imprimatur" for a party to be a "prevailing party" for purposes of a subsequent attorney's fee award by a court. *Richard R.,* 591 F.3d at 422, n.4. A prevailing party may seek attorneys' fees under the IDEA for both the administrative due process proceedings and for subsequent litigation in court. *Id.; Ruben A. v. El Paso ISD,* 657 F. Supp.2d 778, 789 (W.D. Tex. 2009).

Having reviewed the record here and having considered the Court's findings as to Defendant's motion for summary judgment, which are in accord with the Special Education Hearing Officer's findings at the administrative level, the Court finds that Plaintiffs meet the requirements of a prevailing party with respect to the claims on which they were successful. They prevailed in the District's challenge of their request for an IEE with the Special Education Hearing Officer's finding that the District's evaluation of S.F. was not appropriate. *See* Dkt. 1-1 at 26. And, although they did not prevail as to every counterclaim raised before the Special Education Hearing Officer, they succeeded on the significant issues raised by the Special Education Hearing Officer's ultimate finding that the District failed to devise an appropriate IEP for S.F., developed an inappropriate BIP for S.F, and impeded Plaintiffs' opportunity to participate in the decision-making process regarding S.F.'s FAPE. *See* Dkt. 1-1 at 29, 33, 37 & 40. Most importantly, although the Special Education Hearing Officer found for Plaintiffs on only 7 of their 18 counterclaims, the only relief granted in the Special Education Hearing Officer's decision was in Plaintiffs' favor. The Court finds that they were the prevailing parties as to those issues because the relief granted materially altered the

relationship between the District and Plaintiffs as to S.F.'s education.

However, the Court, in its discretion, finds that the attorneys fees and costs award to Plaintiffs shall be limited to those incurred in the preparation of the issues upon which Plaintiffs were successful at the due process hearing and the instant lawsuit to the extent they are severable. *S.H. ex rel. A.H. v. Plano Indep. Sch. Dist.*, 2010 WL 1375177, 12 (E.D. Tex. 2010) (J. Schell). "A finding that a party is a prevailing party only makes him eligible to receive attorneys' fees under the IDEA; it does not automatically entitle him to recover the full amount that he spent on legal representation.'" *Richard R.,* 591 F.3d at 421, *quoting Jason D.W.,* 158 F.3d at 209. *See also Klein Indep. Sch. Dist. v. Hovem*, 745 F. Supp.2d 700, 711 -712 (S.D. Tex. 2010). If the court finds that a party is a prevailing party, the fees can be calculated by identifying a lodestar (reasonable fee multiplied by hours expended by the attorney on the case) and then considering if the figure should be adjusted in light of the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1994). *Ruben A. v. El Paso Indep. Sch. Dist.*, 657 F. Supp.2d 778-89 (W.D. Tex. 2009).

Prior to the Court's recommendation as to the amount to be awarded, the parties are encouraged to reach an agreement regarding Plaintiffs' reasonable and necessary attorneys' fees. If the parties are unable to reach such an agreement, Plaintiffs should file a motion for attorneys' fees within thirty (30) days of the District Judge's consideration of this report and recommendations. Once the Court has either been notified of the parties' agreement as to the amount of fees or the Court has determined the proper amount of fees, final judgment will be entered. Even if the parties reach an agreement as to the amount of fees, Defendant may reserve its right to appeal the Court's

underlying finding that Plaintiffs are the prevailing party.

The Court cautions Plaintiffs that they shall support their request for fees with specific cites to the relevant billing records and specifically show how they determined the amount requested considering the concerns outlined herein. Plaintiffs are further cautioned any award of fees will be governed by the *Johnson* factors and the provisions for reduction of fees set forth in 20 U.S.C. § 1415(i)(3)(F) (allowing the court to reduce fees under IDEA if the court finds that (i) the parents or their attorney unreasonably protracted the litigation; (ii) the amount exceeds the prevailing hourly rate in the community; (iii) the time spent was excessive; or (iv) the parents' attorney did not provide certain information to the educational agency in its complaint). Having reviewed the record before it, without reaching the merits of Defendant's objections to Plaintiffs' requested fees, the Court finds that Defendant is entitled to challenge the amount of fees awarded based on factors (ii) and (iii). The parties' negotiations as to the appropriate amount of fees shall contemplate such concerns.[8]

Morever, the Court declines to consider Plaintiffs' argument that the District has unreasonably protracted this litigation and therefore may not object to the amount of fees pursuant to 20 U.S.C. § 1415(i)(3)(G). That section provides that a court may not reduce attorneys' fees awarded under the IDEA if "the court finds that the State of local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U.S.C. § 1415(i)(3)(G). Plaintiffs do not cite to – and the Court could not identify – any Fifth Circuit cases interpreting this statutory provision. However, reviewing those cases which have

---

[8]Defendant is cautioned, however, that the Court will wholly disregard any reasonableness challenges if the average rate charged or time spent by Plaintiffs' counsel is less than or essentially equal to the average rate charged or time spent by Defendant's counsel.

considered such a request, this case does not appear to rise to the level that would warrant the statutory bar to the reduction in fees. *See, e.g. Troy Sch. Dist. v. Boutsikaris*, 317 F. Supp.2d 788, 801 (E.D. Mich. 2004) (finding the defendant unreasonably protracted proceedings by failing to comply with the limited award of additional educational services of 15 hours of compensatory services ordered by the hearing officer and instead commencing litigation, the purpose of which the defendant conceded was to defeat an anticipated claim for attorneys' fees by the plaintiff).

While the Court has found Plaintiffs to be prevailing parties here, it does not find that Defendant's characterization of the Special Education Hearing Officer's decision – that Plaintiffs did not prevail on the majority of issues – is false, but merely an attempt at advocacy in an effort to protect its own interests. And while the Court has found that the destruction of test protocols denied Plaintiffs the opportunity of participation, it declines to find this to be sufficient grounds for challenging Plaintiffs' counsel's fees. Plaintiffs have not sufficiently demonstrated that Defendant prolonged the litigation such that Defendant has lost its rights to seek a reduction in Plaintiffs' counsel's fees. *See, e.g., T.D. v. La Grange Sch. Dist.,* 2005 WL 483415, 1(N.D. Ill. 2005) (finding that the defendant's mis-characterization of the record, forcing the plaintiff to contest misrepresentations at each phase of proceedings and the defendant's refusal to acquiesce to the hearing officers' findings by filing suit against plaintiff was an "aggressive defense" which "may run counter to the spirit of the Individuals With Disabilities Education Act" but did not unreasonably protract the litigation).

For this reason, the Court also declines to award sanctions under 28 U.S.C. § 1927. There is simply no evidence in the record of bad faith or unreasonable conduct by the District in this case.

The Court further declines to award Plaintiff prejudgment interest on any fees awarded. As noted by Plaintiffs, the cases awarding prejudgment interest (neither of which are governing precedent here) have made such awards based on a finding that the defendants' arguments in opposing fees were absurd, unreasonable, or frivolous. *See Kaseman v. District of Columbia*, 329 F. Supp.2d 20, 28-29 (D. D.C. 2004); *Holbrook v. District of Columbia*, 305 F. Supp.2d 41, 48 (D. D.C. 2004). Plaintiffs have failed to point to anything in the summary judgment record that would indicate such ill motives or patently unreasonably conduct by Defendant. The Court also finds that Plaintiffs have not shown any entitlement to a recovery for fees for copies of materials under 28 U.S.C. § 1920(4).

The Court cautions the parties that a good faith conference regarding fees is expected and shall be conducted in accordance with this Court's meet and confer requirement as set forth in E.D. TEX. LOCAL R. CV-7(h). The Court may reduce the amount of fees awarded if it finds that Plaintiffs unnecessarily protracted the dispute or failed to reach agreement as to a reasonable amount.

## Cross-Motions for Summary Judgment as to Plaintiffs' Claims under the ADA, Section 504 and Section 1983

Finally, in their motions for summary judgment, both parties seek judgment in their favor as to Plaintiffs' claim for expert expenses and damages under Americans with Disabilities Act, 42 U.S.C. §12205 and 28 C.F.R. §35.175, damages under Sections 504 and 505 of the Rehabilitation Act, 29 U.S.C. § 794, and damages under 42 U.S.C. §§ 1983 and 1988.

Notably, Plaintiffs have cited to no governing precedent that would allow the recovery of such damages for the same facts as those arising out of an IDEA claim. Defendant argues that the claims are precluded by claim preclusion or are otherwise barred. As set forth below, the Court

agrees with Defendant.

A student may assert claims under IDEA as well as Section 504 and the ADA. *Marvin H. v. Austin Indep. Sch. Dist.,* 714 F.2d 1348, 1356 (5th Cir. 1983); 20 U.S.C. § 1415( *l* ) (providing in pertinent part: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies under ... the Americans with Disabilities Act of 1990 ... title V of the Rehabilitation Act of 1973 ... or other Federal laws protecting the rights of children with disabilities ..."). The Fifth Circuit has explained that, while the IDEA imposes an affirmative obligation on states to assure disabled children a free appropriate public education, Section 504 and the ADA broadly prohibit discrimination against disabled persons in federally assisted programs or activities. *D.A. v. Houston Indep. Sch. Dist.,* 629 F.3d 450, 453 -454 (5th Cir. 2010). However, when a plaintiff's claims under the ADA and Section 504 are factually and legally indistinct from his IDEA claims, general principles of issue preclusion will bar redundant claims. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 297 (5th Cir. 2005). Thus, in the Fifth Circuit "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504 or ADA against a school district predicated on a disagreement over compliance with IDEA." *D.A.*, 629 F.3d at 455.

Because these claims do not arise under the IDEA and were not before the Special Education Hearing Officer, the summary judgment motions regarding Plaintiffs' ADA, Section 504/505, and 1983/1988 claims are governed by the traditional motion for summary judgment standard. In responding to Defendant's summary judgment, Plaintiffs "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific

facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14).

Plaintiffs have not pointed to any evidence in the record before the Court that would infer that the District here acted in bad faith or grossly misjudged S.F.'s condition such that issue preclusion would not apply to their claims under the ADA and Sections 504 & 505. Further, Plaintiffs' summary judgment pleadings do not cite to any evidence that would create a genuine issue of material fact as to any damages suffered. Therefore, summary judgment should be granted in favor of Defendant that Plaintiffs take nothing by these claims.

As to Plaintiffs' claims under Section 1983, the Fifth Circuit has found that disabled children cannot assert a violation of their rights through Section 1983 claims. "Nothing in § 1415( *l* ) [of the IDEA] indicates an intent to facilitate the expansive remedies under § 1983 in addition to IDEA's carefully calibrated mechanism to prevent or remedy violations." *D.A.*, 629 F.3d at 456. Because Plaintiffs cannot bring a claim under Sections 1983, they are not entitled to attorneys' fees under 42 U.S.C. § 1988. Therefore, summary judgment should be granted in favor of Defendant dismissing Plaintiffs' 1983 and 1988 claims.

### RECOMMENDATION

Therefore, the Court finds that Defendant's Motion for Judgment (Dkt. 45) should be GRANTED in part and DENIED in part, that Plaintiff's Motion for Summary Judgment (Dkt. 46) should be GRANTED in part and DENIED in part, that Defendant should take nothing by its counterclaim here, that Plaintiffs are entitled to an award of attorneys' fees as a prevailing party, that Plaintiffs shall take nothing by their ADA and Sections 504 & 505 claims, that Plaintiffs' claims

under Section 1983 and 1988 should be dismissed, and that within thirty (30) days of the District Judge's consideration of this report and recommendations, after a good faith conference, either the parties should file an agreed notice regarding the amount of attorneys' fees to be awarded or Plaintiffs should file a motion for attorneys' fees.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge regarding the motion to dismiss. 28 U.S.C.A. § 636(b)(1)(C).

Failure to timely file written objections to the proposed findings and recommendations contained in this report shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 6th day of March, 2012.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE